IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-02131-LTB

ROCKY MOUNTAIN CHIPSEAL, LLC, a Colorado limited liability company,

      Plaintiff,

v.

SHERMAN COUNTY, KANSAS,

      Defendant.
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

      This matter is before me on the Motion to Dismiss **[Doc # 7]** filed by Defendant Sherman County, Kansas ("Sherman"). Sherman moves pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) to dismiss Plaintiff Rocky Mountain Chipseal, LLC's ("RMC"), complaint for lack of personal jurisdiction and improper venue. After consideration of the parties' arguments, and for the reasons stated below, I GRANT the portion of the motion seeking to dismiss RMC's complaint for lack of personal jurisdiction, and I DENY as moot the portion seeking dismissal for improper venue.

**I. Background**

      RMC is a limited liability company incorporated under Colorado law and keeps its principal place of business in Colorado. Sherman is a Kansas county created by Kansas law.

      On January 19, 2010, RMC provided Sherman with a proposed contract for RMC to perform chipsealing work for Sherman on a stretch of road in Sherman County, Kansas. Sherman, acting through the chairman of its board of county commissioners, executed the contract in Kansas and

faxed it to RMC in Colorado on May 3 of that year.  RMC completed the first phase of the work in September 2010 and left its equipment in Sherman County in order to complete the second and final phase of the project in May 2011.

On April 19, 2011, Sherman informed RMC that it no longer wanted RMC to complete the second phase of the project.  In response, RMC filed suit in Colorado district court, asserting claims for breach of contract, unjust enrichment, and negligent misrepresentation.  Sherman removed the matter to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, on grounds of diversity jurisdiction under 28 U.S.C. § 1332.

## II. Discussion

### *A. Personal Jurisdiction*

Sherman's first challenge is for want of personal jurisdiction.  A judgment rendered by a court lacking jurisdiction is void.  *See, e.g.*, *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 608-09 (1990).  RMC bears the burden of establishing jurisdiction over Sherman.  *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).  "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing."  *Id.*  My review of the motion takes the allegations in RMC's complaint as true to the extent that they are uncontroverted by Sherman's affidavit.  *See id.*  "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Id.*

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of

jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)). Hence, the first step in the analysis is examining Colorado's long-arm statute. That statute permits exercising jurisdiction over defendants who transact business in the state. Colo. Rev. Stat. § 13-1-124(1)(a). It is construed to grant personal jurisdiction to the full extent permitted under federal law. *See Safari Outfitters, Inc. v. Superior Court*, 448 P.2d 783, 784 (Colo. 1968). The analysis therefore collapses into a single inquiry: whether exercising personal jurisdiction over Sherman comports with due process. *See Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC,* 234 P.3d 673, 677-78 (Colo. 2010)

Due Process "protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)). "Therefore, a 'court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state.' " *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "Minimum contacts" shields a defendant bereft of meaningful contacts with a state "from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar." *Id.*

Minimum contacts is satisfied by specific or general jurisdiction. *Id.* Consistent with due process, I may assert *specific* jurisdiction over a nonresident defendant if it has " 'purposefully directed' [its] activities at residents of the forum, and the litigation results from alleged injuries that

'arise out of or relate to' those activities." *Id.* at 1090-91 (quoting *Burger King*, 471 U.S. at 472). If specific jurisdiction is absent, I may nonetheless maintain *general* personal jurisdiction over Sherman "based on the [its] general business contacts with the forum state." *Id.* at 1091 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984)). Because general jurisdiction is not related to the events giving rise to the suit, I impose a more stringent test requiring RMC to demonstrate that Sherman has "continuous and systematic general business contacts" with Colorado. *Id.*

Before assessing whether specific or general jurisdiction is present here, I address RMC's first argument for why this Court has personal jurisdiction over Sherman, which is that it personally served one of Sherman's commissioners, Cynthia Strnad, while she was in Colorado. Relying on *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952), RMC asserts that this conferred personal jurisdiction over Sherman.

It is indeed the case that where "service is made upon a natural person found within the state, the minimum contacts analysis in inapplicable." *O'Brien v. Eubanks*, 701 P.2d 614, 616 (Colo. App. 1984); *accord Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("[D]ue process requires only that in order to subject a defendant to a judgment in personam, *if he be not present within the territory of the forum,* he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' ") (emphasis added). This is a function of the general rule that personal service upon someone present in the forum state confers jurisdiction over the person served. *O'Brien*, 701 P.2d at 616; *accord Burnham*, 495 U.S. at 619 ("The short of the matter is that jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process

standard of 'traditional notions of fair play and substantial justice.' "). That rule, however, does not ineluctably establish personal jurisdiction in the instant case because RMC must establish jurisdiction over *Sherman*–not Ms. Strnad. Plaintiff's argument thus rests on the tacit supposition that serving Ms. Strnad served Sherman, that Sherman was "present" in and through Ms. Strnad such that serving her effected service upon it. This is the issue I examine.

Because RMC fails to direct me to the law apposite to its position, I must unearth it with my own shovel, beginning with how a county must be served. Federal law provides that a county must be served by either "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Courts have interpreted "that state's law" in option (B) to mean the state where the government entity "is physically located and of which it is a citizen." *See, e.g.*, *U.S. Steel Corp. v. Multistate Tax Comm'n*, 367 F. Supp. 107, 118 (S.D.N.Y. 1973) (interpreting " 'that state' to mean the state where the Commission is physically located and of which it is a citizen: namely, Colorado."), *and Clark Cnty., Nev. v. City of Los Angeles, Cal.*, 92 F. Supp. 28, 31 (D. Nev. 1950) ("The words 'that state' . . . obviously refer to a state made a defendant in an action or to the state under the laws of which a municipal corporation defendant was chartered or brought into existence."). Kansas law directs that a plaintiff must serve "one of the county commissioners, the county clerk or the county treasurer" to serve a county. Kan. Stat. Ann. § 60-304(d)(1). (I note that Colorado law also prescribes that a county may be served by serving one of its commissioners. *See* Colo. R. Civ. P. 4(e)(7).) Stopping here would suggest that serving Ms. Strnad in Colorado vested this Court with jurisdiction over Sherman. But stopping here would be premature.

Sherman rejoins that Ms. Strnad was in Colorado for personal reasons–that is, when she was served, she was in Colorado on her own accord as a private citizen, *not* for any matters related to Sherman or her county commissionership. Neither RMC's complaint nor its response is inconsistent with this assertion. Ms. Strnad also lives in Kansas. *See* Def.'s Mot. Ex. A. at 2. As will be discussed in Part II.A.1, *infra*, Sherman also contends that it lacks minimum contacts with Colorado. Its position is that Ms. Strnad's presence in Colorado under these circumstances was not tantamount to it being present. I agree.

Here, the essential question is whether Sherman, an entity, was "present" in Colorado by virtue of Ms. Strnad's presence such that it was personally served therein. A natural person's "presence" is inherently different vis-à-vis the "presence" of a legal person such as a publicly held or municipal corporation. Unlike the natural person, the latter's presence "can be manifested only by activities carried on in its behalf by those who are authorized to act for it." *Int'l Shoe*, 326 U.S. at 316. There is a robust body of law concerning the situation in which a plaintiff, in hopes of acquiring personal jurisdiction over a foreign corporation, served an officer of that foreign corporation while the officer was transitorily in the forum state. This scenario is sufficiently akin to the factual constellation before me such its law should be brought to bear.

Without providing a dissertation on the subject and exploring all its factual permutations, one principle is clear: When a corporate officer is served in the forum state while she was there for reasons unrelated to the defendant-corporation, and that corporation lacks minimum contacts with the forum state, serving that officer did *not* confer the forum state with jurisdiction over the corporation. *See O'Brien*, 701 P.2d at 616-17 ("[W]e agree with defendant Kemco that service of process on Eubanks as its president was insufficient to give Colorado jurisdiction. Eubanks was not

in Colorado to do business for the company. Because there were no other contacts between Kemco and Colorado, the transitory and non-business related presence of its president could not support finding the corporation's presence within the state to be sufficient to confer jurisdiction . . . ."); *see also Int'l Shoe*, *supra*; *Scholz Research and Dev., Inc. v. Kurzke*, 720 F. Supp. 710, 713 (N.D. Ill. 1989); *Cohen v. Kalwall Corp.*, 255 F.2d 285, 286 (2nd Cir. 1958); *and First American Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 360-362 (S.D.N.Y. 1997), *aff'd* 154 F.3d 16 (2nd Cir. 1998)).

Sherman lacks both minimum contacts and continuous and systematic contacts with Colorado. *See* Part II.A.1 and 2, *infra*. Neither RMC's complaint nor its reply is discordant with the assertion that Ms. Strnad was in Colorado for reasons unrelated to her Sherman commissionership. Applying the rule above, I conclude that serving Ms. Strnad did not confer this Court jurisdiction over Sherman. Put another way, Ms. Strnad's presence in Colorado did not effect Sherman's presence here. As a corollary, Sherman was not personally served in the state. (I note parenthetically that as there are no allegations of service upon Sherman other than the service upon Ms. Strnad in Colorado, a salient issue is whether Sherman was ever served in accordance with Fed. R. Civ. P. 4. I do not plumb this question because neither party raises it, and assuming, *arguendo*, proper service in Kansas, I nevertheless dismiss RMC's complaint for lack of personal jurisdiction.)

*Perkins*, *supra*, the only legal authority RMC cites for this argument, is inapposite. This is because, in *Perkins*, the foreign corporate defendant over whom the Ohio court attempted to exercise jurisdiction had "been carrying on in Ohio a continuous and systematic, but limited, part of its general business." *Id.* at 414. The officer whom plaintiff served in Ohio, the corporation's president, was engaged in corporate business therein when he was served. *Id.* at 414-15. Neither

7

of these crucial facts is present here. And the cases cited above explain that in their absence, transient service of a corporate officer does not confer the forum court jurisdiction over the corporation.

In addition to the rule governing the transient service of an officer, there is also case law holding that a municipal corporation may not be brought within the jurisdiction of a federal court sitting in a state other than the state of which the municipal corporation is a creature. *See Clark Cnty.*, 92 F. Supp. at 32. This too favors finding want of jurisdiction here, as Sherman is a Kansan whose existence and power to act derive from Kansas law. *See Bd. of Cnty. Commr's of Sedgwick Cnty. v. Lewis*, 453 P.2d 46, 49 (Kan. 1969); *see also* Kan. Stat. Ann. § 19-101.

For the foregoing reasons, I conclude that personally serving Ms. Strnad did not vest this Court with jurisdiction over Sherman. I therefore proceed with whether specific or general jurisdiction is attendant.

**1. Specific Jurisdiction.**

Whether specific jurisdiction exists involves a two-step inquiry. I first consider whether Sherman's conduct and connection with Colorado are such that it "should reasonably anticipate being haled into court []here." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Woodson*, 444 U.S. at 297). If it should, I consider whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Id.* Because I answer the first question in the negative, I need not and do not address the second question.

To determine whether Sherman has established minimum contacts with Colorado, I examine "whether [it] 'purposefully availed itself of the privilege of conducting activities [in Colorado]." *Id.* at 1076 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "A defendant's contacts are

sufficient if 'the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.' " *Id.* (quoting *OMI*, 149 F.3d at 1091).

RMC asserts that Sherman purposefully directed its activities towards RMC in the following ways: Sherman initiated the parties' relationship by contacting RMC via telephone to solicit its services. The parties communicated over the phone while they were in their respective states. Payments between the parties crossed the states.

I disagree with RMC. To begin, an examination of the briefs and complaint vitiates the first way in which Sherman purportedly availed itself of Colorado. The complaint states that "[o]n or about January 19, 2010, *RMC provided Sherman [] with a proposed contract*." Compl. ¶ 5 (emphasis added). RMC states in its reply that "[i]n the summer of 2010, Sherman [] representatives called RMC to discuss certain road repairs they wanted to perform." Pl.'s Reply at 1. Furthermore, an affidavit affixed to Sherman's motion from its county clerk, Janet Rumpel, states that RMC traveled to Kansas to present the proposal for the work at a regularly scheduled Sherman commissioner's meeting and that Ms. Rumpel had no knowledge of RMC prior to that meeting. Thus, RMC's own allegations and Sherman's affidavit controvert RMC's assertion that Sherman reached into Colorado to solicit the work. I therefore need not take this allegation to be true. *See Behagen*, 744 F.2d at 733. Moreover, even assuming its veracity, the other factors and facts I consider demonstrate that Sherman lacked minimum contacts. *See Burger King*, *supra.*

Turning to the phone calls and payments between the parties, the second and third ways in which RMC asserts that Sherman established minimum contacts, "it is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Towne*,

46 F.3d at 1077.  RMC does not allege that the communications were of such volume or import that they themselves established minimum contacts.  *See, e.g.*, *Knowledge*, 234 P.3d at 679-80 (giving weight to emails and telephone communications numbering at least in the hundreds), *and Benton,* 375 F.3d at 1077.  And because a contract between an out-of-state party and a resident of the forum state cannot alone establish sufficient minimum contacts with the forum, *Burger King*, 471 U.S. at 478, it stands to reason that simple payment pursuant to that contract is also insufficient.  RMC needs more munition for its jurisdictional argument.

None is available.  In a contract case, relevant factors for assessing minimum contacts include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing."  *Id.* at 479.  No prior negotiations are averred, aside from Sherman's purported solicitation–shown to be dubious at best.  Insofar as the proposal of the project was a prior negotiation, RMC traveled to Kansas to render it.  And in Ms. Rumpel's 28-year tenure as Sherman's county clerk, Sherman had never before engaged, contracted with, or requested RMC to perform any work.  *See* Def.'s Mot. Ex. A at 2. Similarly, with regards to the contract's terms and the course of dealing, the contract created a relatively short relationship with a definitive end after which there were no ongoing obligations.  All the work pursuant thereto was performed in Kansas.  Neither Ms. Rumpel nor any of Sherman's commissioners ever traveled to Colorado to meet with RMC concerning the project and contract at issue.  *See id.* at 3; *compare Benton*, 375 F.3d at 1077 ("Even more significant to our minimum contacts analysis, Cameco sent several of its employees to Mr. Benton's office in Colorado to conduct due diligence review by the MOU.").  The factors delineated in *Burger King* thus weigh heavily against a finding of minimum contacts.  So do the remaining facts.  Sherman states that aside from the contract, it has no

connection with the state. Neither it nor any of its commissioners maintain an office in Colorado. *See* Def.'s Mot. Ex. A at 2.

The preceding analysis thus leaves RMC with but one arrow in its quiver to shoot at the personal jurisdiction target: there was a contract with Sherman. But "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, . . . the answer clearly is that it cannot." *Burger King*, 471 U.S. at 478. Consequently, I conclude that Sherman does not have minimum contacts with Colorado. I therefore need not proceed to step two of the specific jurisdiction analysis.

### 2. General Jurisdiction

Although I have found that specific jurisdiction over Sherman is wanting, I must further inquire whether general jurisdiction exists. *See Benton*, 375 F.3d at 1080. To establish general jurisdiction, RMC must meet a "high burden." *Id.* at 1081. It must show that Sherman had "continuous and systematic general business contacts" with Colorado. *Id.*

Put plainly and succinctly, RMC alleges no facts establishing this level of intimacy and activity between Sherman and Colorado. *See* Part II.A.1, *supra*. I take RMC's silence in its reply regarding general jurisdiction as acquiescing to this reality.

Accordingly, I conclude that this Court does not have jurisdiction over Sherman. I therefore grant this portion of the motion.

### B. *Venue*

Dismissing RMC's complaint for lack of jurisdiction over Sherman obviates the need to address Sherman's venue argument. I therefore deny this portion of the motion as moot.

### III. Conclusion

For the foregoing reasons, I GRANT the portion of Sherman's Motion to Dismiss **[Doc # 7]** seeking to dismiss RMC's complaint for lack of personal jurisdiction, and I DENY as moot the portion seeking dismissal for improper venue, costs to be awarded to Sherman.

Date: January __18__, 2012 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE